## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **RAYMOND J. TOBIN Jr.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:10CV1519MLM** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael Astrue ("Defendant") denying the application for disability insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., filed by Plaintiff Raymond J. Tobin, Jr., ("Plaintiff"). Plaintiff filed a brief in support of the complaint. Doc. 8. Defendant filed a brief in support of the answer. Doc. 15. Plaintiff filed a reply brief. Doc. 18. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 5.

## I.
## PROCEDURAL HISTORY

On April 19, 2006, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of April 4, 2002. Tr. 30, 123-28. Following an unfavorable determination, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 85-93. On November 16, 2007, a hearing was held before an ALJ. Tr. 30-78. By decision dated June 25, 2008, the ALJ found Plaintiff not disabled through the date of decision. Tr. 11-23. Plaintiff sought review of the ALJ's decision with the Appeals Council. Tr. 9-10. On June 28, 2010, the Appeals Council denied

Plaintiff's request for review.  Tr. 1-5.  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id.  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1.  If the claimant has one of, or the medical equivalent of, these impairments, then the

claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC").  Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id.  See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision,

that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because

4

the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022.  See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

5

to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains

inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's

limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was fifty-two years old at the time of the hearing and who alleges he became disabled in April 2002, testified that he is a high school graduate; that he was an over-the-road truck driver for twenty-seven years; that after truck driving he was a meat-cutter; that he left the meat-cutting position because lifting boxes and standing on the concrete floor caused soreness and pain in his lower back; that he had not worked since 2005; that he stopped working primarily because of his sleep apnea; that his use of a CPAP machine helped some; that he has problems remembering things because of his sleep apnea; that he has excess water in his legs that causes swelling; that his knees have arthritis; that his carpal tunnel syndrome causes his wrists in both hands to hurt; that he has sharp lower back pain; that his lower back pain makes it difficult for him to sit or stand too long in

8

one place; and that he spends about five and a half hours out of an eight hour period in his recliner. Tr. 33-45.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date; that Plaintiff had the severe impairments of obesity, obstructive sleep apnea, degenerative upper extremity changes consistent with bilateral carpal tunnel release surgeries and lumber degenerative disc disease; that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment; that Plaintiff had the RFC to perform light work with certain restrictions; that Plaintiff's complaints regarding the intensity, persistence, and effects of his symptoms were not fully credible; that Plaintiff was not able to perform his past relevant work; that there were other jobs which existed in significant numbers which Plaintiff could perform; and that, therefore Plaintiff was not disabled. Tr. 16-23.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ erred in not giving controlling weight to the findings of Briccio Cadiz, M.D., who was Plaintiff's treating physician; because the ALJ failed to recontact Dr. Cadiz; because the ALJ's credibility determinations were flawed; and because the ALJ did not find that Plaintiff was unable to perform any work because of the restrictions to avoid all exposure to respiratory irritants.

A.    **Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945

(2010).  As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).  Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).  In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination."  Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).  See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).  For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered the inconsistencies between Plaintiff's claim regarding the severity of his sleep apnea and the medical records.  In particular, the ALJ considered sleep tests Plaintiff underwent due to his sleep apnea, the extent to which test results were inconsistent with Plaintiff's testimony regarding the effects of his sleep apnea, and the extent to which Plaintiff's sleep apnea was treatable. Tr. 19-20.  During the hearing, Plaintiff testified that he was up and down all night and was only able to sleep for three hours. Tr. 38.  On November 2, 2007, pursuant to sleep disorder testing, it was reported that Plaintiff's sleep efficiency was 81.1% with a total of 346 minutes of sleep, or just shy of six hours of sleep. Tr. 19, 413.  The tester noted that Plaintiff had abnormal test results and recommended a new test with different equipment in a different room with "whichever equipment [Plaintiff] prefer[ed]." Tr. 413.

As considered by the ALJ, the "new test" and conditions indicated that there was a treatment for Plaintiff's condition and that it was just a matter of "identifying a more appropriate means of treating [Plaintiff's] condition." Tr. 19.  Additionally, Dr. Cadiz reported, on November 20, 2007, that Plaintiff needed a 'bipap nasal pillow." Tr. 467.  Further, as stated above, Plaintiff testified that use of a CPAP helped his sleep apnea. Tr. 38.  Conditions which can be controlled by treatment are not disabling. See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Waterford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that  medical condition that can be controlled by treatment is not disabling).

Further, the ALJ noted that Plaintiff declined the applicable treatment for his sleep apnea. Tr. 19.  The record reflects that, in July 2004, October 2004 and January 2005, Plaintiff stated that he

11

was not using CPAP and "[did] not want to." Tr. 209, 212, 216. Such noncompliance with treatment is a proper factor in the credibility analysis. Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001). Moreover, as noted by the ALJ Plaintiff received treatment for sleep apnea only from his primary care doctor and that, it was not until after the November 2007 hearing that he underwent a sleep study. A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. Comstock v. Chater, 91 F.3d 1143, 1146-46 (8th Cir. 1996) (citing Benskin, 830 F.2d at 884); Polaski, 739 F.2d at 1322. Additionally, a lack of objective medical evidence contradicts a claimants allegations of disabling pain. Comstock, 91 F.3d at 1147 (citing Smith v. Shalala, 979 F.2d 1371, 1374 (8th Cir. 1993). As such, the ALJ concluded that Plaintiff's allegation of daytime sleepiness due to his sleep apnea was exaggerated. Tr. 21. The court finds that the ALJ's consideration of Plaintiff's sleep apnea in regard to Plaintiff's credibility is based on substantial evidence and that it is consistent with the Regulations and case law.

Second, the ALJ considered Plaintiff's allegation of chronic fatigue in the context of Plaintiff's daily activities. Tr. 21. Despite Plaintiff's allegation of chronic fatigue, Plaintiff testified that he was able to watch television, read the newspaper, cook meals, mow his lawn, grocery shop and live alone. Tr. 45, 50. Additionally, Plaintiff testified that he socialized with friends at dinner once in a while, was a member of the Elks Club and the American Legion, and, on occasion, would go to the ball game. Tr. 45-46. The ALJ considered that Plaintiff's ability to perform such functions indicated that his daytime sleepiness was exaggerated. Tr. 21. Indeed, inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792 (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999). See also Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities including visiting neighbors, cooking,

doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second stop of analysis). Although the undersigned, as did the ALJ, does not disregard Plaintiff's subjective complaints, they are not supported by the objective medical evidence. See Polaski, 739 F.2d at 1322 ("The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is [] one factor to be considered in evaluating the credibility of the testimony and complaints."). The court finds that the ALJ's consideration of Plaintiff's daily activities is supported by substantial evidence and that it is consistent with the Regulations and case law.

Third, the ALJ considered the extent to which Plaintiff's medical records were inconsistent with his complaints of back pain. Tr. 20. Plaintiff testified that he has to shift positions constantly to relieve pain. Tr. 59. However, Barry Burchett, M.D., reported, on June 8, 2006, that Plaintiff ambulated with normal gait, which [was] not unsteady, lurching or unpredictable"; that Plaintiff did not require a handheld assistive device; that he appeared stable at station and comfortable in the supine and sitting positions"; that examination of Plaintiff's cervical spine revealed no tenderness over the spinous processes and there was no evidence of paravertebral muscle spasm; that examination of Plaintiff's doroslumbar spine revealed normal curvature and no evidence of muscle spasm, no tenderness to percussion; that Plaintiff was able to stand on one leg at a time without difficulty; that there was no hip joint tenderness, swelling or crepitus; that he was able to walk on heels and toes and perform tandem gait without difficulty; and that the impression included chronic low back pain without radiculoptathy. Tr. 268-71.

An April 6, 2007 radiology report states that Plaintiff had "mild degenerative change with slight disc space narrowing at L2-3 and L3-4." Tr. 323. On August 10 and November 20, 2007,

13

March 28, April 28, May 27, September 11, and October 9, 2008, and February 18, 2009, Dr. Cadiz reported that Plaintiff's general appearance was "comfortable."Tr. 435, 439, 442, 449, 452, 454, 466, 473.  On October 18, 2010, Dr. Cadiz reported that Plaintiff appeared "uncomfortable" and that Plaintiff's "lawyer need[ed] a letter for disability." Tr. 469.  A lack of objective medical evidence is a factor an ALJ may consider in determining a claimant's credibility. Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004). Indeed, although an ALJ may not disregard a claimant's subjective allegations because they are not fully supported by objective medical evidence, an ALJ may properly discount subjective complaints if inconsistencies exist in the record as a whole. Gonzalez v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (citing Ramirez v. Barnhart, 292 F.3d 576, 581 (8th cir. 2002)); 20 C.F.R. § § 404.1529(c), 416.929(c).  The court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the Regulations and case law.

Fourth, as considered by the ALJ, the record reflects that Plaintiff took Aleve for back pain, and that he received some treatment from a chiropractor and does not reflect that Plaintiff was referred for physical therapy or to a pain management clinic for his alleged back pain. Tr. 21, 54, 395. The ALJ noted that if Plaintiff's "back pain were perceived to be so severe as to prevent him from working, it is reasonable to believe that other prescription or even narcotic pain medications might have been tried, since [Aleve] did not appear to be providing much relief." Tr. 21.  In fact, Dr. Cadiz reported on a Multiple Impairment Questionnaire, dated October 22, 2007, that Aleve was Plaintiff's only medication.[1] Tr. 395.  Despite Plaintiff's indicating that Aleve did not relieve his pain, the record reflects that he continued to take Aleve and later stated that it helped. Tr. 420-21, 442.  Where a

---

[1]      Plaintiff did testify that he was prescribed Ralafen for his back pain and that he stopped taking it because it was "a high narcotic and [he] was afraid [he] was going to [become] addicted to it." Tr. 54.

14

plaintiff has not been prescribed any potent pain medication, an ALJ may properly discount the plaintiff's complaint of disabling pain. Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994); Benskin, 830 F.2d at 884 (holding that treatment by hot showers and taking dosages of Advil and aspirin did not indicate disabling pain); Cruse v. Brown, 867 F.2d 1183, 1187 (8th Cir. 1989) (holding that minimal consumption of pain medication reveals a lack of disabling pain); Rautio, 862 F.2d at 179 (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling pain). Moreover, seeking limited medical treatment is inconsistent with claims of disabling pain. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("The ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is inconsistent with the Regulations and case law.

Fifth, the ALJ considered that Plaintiff's leg edema appeared to be related to his obesity, rather than to cardiac or liver functioning issues. Tr. 20. Plaintiff did receive some counseling from Sharon Grass, FNCP, for his diet. Tr. 322, 365-66, 449, 463, 471. However, despite Plaintiff's history of obesity, directions to change his diet and lose weight did not occur until after Plaintiff had filed for disability. Tr. 365. Sharon Grass and/or Dr. Cadiz instructed Plaintiff to lose weight, exercise, and modify his food portions, discussed tips to lose weight, and prescribed appetite suppressants. Tr. 322, 365-66, 449, 463, 471. Additionally, a thyroid check had "normal" results. Tr. 449. On January 21, 2008, it was reported that Plaintiff limited his exercise because it was "cold outside." Tr. 462. As stated above, a claimant's failure to comply with prescribed treatment is inconsistent with complaints of disabling pain. See Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996). As noted by the ALJ, if Plaintiff's leg edema and swelling was a problem, Plaintiff would have

been counseled to alter his "diuretic regimen or he might be advised to wear compression stockings."

Tr. 20.   A pattern of conservative medical treatment is a proper factor for an ALJ to consider in

evaluating a claimant's credibility. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (citing Black

v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).  The court finds that the ALJ's decision, regarding his

edema, is supported by substantial evidence and that it is consistent with the Regulations and case

law.

        Sixth, the ALJ considered that Plaintiff's medical records were inconsistent with his allegation

that he was depressed.   Indeed, Plaintiff testified that he was not able to focus and maintain

concentration due to his depression.   While it was reported on a  Psychiatric Review Form that

Plaintiff's diagnosis included "probable depression," the person completing this form further reported

that Plaintiff's "depression" did not meet the criteria of any of the affective disorders. Tr. 278-79.

Additionally, despite Dr. Cadiz's assessment of depression during examinations, Plaintiff's medical

records indicate that he was never been prescribed medication for depression nor did he seek

treatment from a mental health professional, other than during the process of his applying for

disability. Tr. 19, 276.  Records of April 6, 2006, July 17, 2006, do not reflect that Plaintiff had any

"psych" issues or that he was in any distress, although it was reported, on March 27, 2006, that he

was anxious. Tr. 255, 302, 304. Significantly, as considered by the ALJ, although Dr. Cadiz stated

on an October 22, 2007 Multiple Impairment Questionnaire that Plaintiff had depression, he also

stated that Plaintiff was "[c]apable of low stress jobs," that he was not on any antidepressants, and

that his "coping [was] acceptable." Tr. 396.  As stated above, an ALJ may properly discount a

claimant's subjective complaints if inconsistencies exist in the record as a whole. See Gonzalez, 465

F.3d at 895. The court finds that the ALJ's decision, regarding medical records supporting Plaintiff's

claim of depression, is supported by substantial evidence and that it is consistent with Regulations and case law.

Seventh, the ALJ considered that, despite Plaintiff's allegation that he had trouble with his hands, he was not referred to nor did he seek treatment from a specialist. Further, he did not wear wrist splints nor were they recommended. Tr. 21. A lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility. Comstock v. Chater, 91 F.3d 1143, 1146-46 (8th Cir. 1996) (citing Benskin, 830 F.2d at 884); Polaski, 739 F.2d at 1322. Additionally, a lack of objective medical evidence contradicts a claimants allegations of disabling pain. Comstock, 91 F.3d at 1147 (citing Smith v. Shalala, 979 F.2d 1371, 1374 (8th Cir. 1993). As such, the court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the Regulations and case law.

In conclusion, the court finds that the ALJ's consideration of Plaintiff's credibility is based on substantial evidence and that it is consistent with the Regulations and case law.

## B.     The Opinions of Treating Doctors:

It is the ALJ's function to "resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted). "A treating physician's opinion is given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] record.'" Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. §404.1527(d)(2)(2000)). Indeed, if they are not controverted by substantial medical evidence or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991)). However, while the opinion

17

of the treating physician should be given great weight, an ALJ may "discount or even disregard the opinion of treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). See also Travis, 477 F.3d at 1041 ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight). An ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record. Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

**1.     Dr. Cadiz's Opinion**:

 Dr. Cadiz opined in an August 8, 2009 letter that Plaintiff could "only sit and stand less than 1 hour at a time"; that his prognosis was "fair"; that "his condition would exceed 12 months duration"; that Plaintiff could not "do full time repetitive work"; and that Plaintiff is "disabled." Tr. 529.  Also, on October 22, 2007, Dr. Cadiz completed a Multiple Impairment Questionnaire for Plaintiff in which Questionnaire Dr. Cadiz opined, among other things, that Plaintiff's chronic low back pain was sharp and constant; that he had limitation of motion lifting and bending; that standing caused Plaintiff pain; that "lifting/pushing/pulling > 30 pounds" "precipitated factors leading to [Plaintiff's] [] pain"; that "other factors" which related to Plaintiff's pain included obesity and leg edema; that Plaintiff's pain was 7 on a 10 point scale; that his level of fatigue was 9 on such a scale; that he could sit and stand/walk for one hour in an eight-hour day; that Plaintiff needed to get up and move around every thirty minutes and could not sit again for one hour; that he could never lift or

carry over 50 pounds; that he could occasionally and/or frequently[2] lift and carry 10 to 20 pounds; that Plaintiff had "significant limitations in doing repetitive reaching, handling, fingering [and] lifting" due to his history of carpal tunnel syndrome; that his ability to grasp, turn, and twist objects with either hand was minimal; that his use of his fingers/hands for fine manipulations was minimal; that his use of his arms for reaching, including overhead, was minimal; that Plaintiff took naproxen; that Dr. Cadiz had not substituted other medications in an attempt to reduce Plaintiff's symptoms; that Plaintiff had not required surgery; that Plaintiff's "symptoms [would] likely increase if he[] were placed in a competitive work environment"; that Plaintiff could not "do a full time competitive job that require[d]" "keep[ing] the neck in a constant position (e.g. looking at a computer screen)"; that Plaintiff's symptoms were severe enough to interfere with his attention and concentration; that his symptoms would last at least twelve months; that Plaintiff could "tolerate work stress" to the degree of being "[c]apable of low stress"; that Plaintiff was not on any antidepressants and his "coping [is] acceptable";that Plaintiff would need unscheduled breaks every four hours and would have to rest one hour before returning to work; that Plaintiff would have "bad days" more than three times a month; and that Plaintiff has psychological limitations and limitations in regard to pushing, pulling, kneeling, bending, and stooping which would affect his ability to work at a regular job on a sustained basis. Tr. 391-98.   Plaintiff contends that Dr. Cadiz's opinion is well-supported and consistent with the evidence and that the ALJ should have given his opinion controlling weight to determine that Plaintiff was disabled. Pl. Br. 8.

---

[2]     Dr. Cadiz checked boxes indicating Plaintiff could do these activities "Occasionally" and "Frequently." Tr. 394.

First, to the extent Dr. Cadiz opined that Plaintiff is disabled, a treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Dr. Cadiz's opinion is inconsistent with his prescribed medical treatment. See Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007)("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."). Moreover, a brief, conclusory letter from a treating physician stating that the applicant is disabled is not binding. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir. 1986)(per curiam)("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature." ).

Second, as set forth above in regard to Plaintiff's credibility, Dr. Cadiz's treatment notes are inconsistent with Plaintiff's allegation that he is disabled.  Also, as discussed above in regard to Plaintiff's credibility, Dr. Cadiz prescribed only Aleve for Plaintiff's pain and he reported that Plaintiff did not use his CPAP, despite his alleged fatigue. See Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir.2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."); Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is given controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence").

Third, Dr. Cadiz's opinion is inconsistent with objective test results. As stated above, April 2007 views of Plaintiff's spine showed *mild* degenerative changes with *slight* disc space narrowing at L2-3 and L3-4. They also showed *small* spurs, no fracture, no spondylolysis, no blastic or lytic lesions, and that pedicles were intact. Tr. 323. Where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987).

Fourth, to the extent Dr. Cadiz checked boxes on the Multiple Impairment Questionnaire indicating, among other things, that Plaintiff could not sit continuously and not stand/walk continuously in a work setting, a treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan 239 F.3d at 961; Social Security Ruling 96-2p, (July 2, 1996).

Fifth, Dr. Cadiz did opine in his August 2009 letter that Plaintiff could frequently lift and carry "10-20 lbs" and he did not indicate that Plaintiff had any limitations in regard to lifting "5-10 lbs." Tr. 394. Additionally, Dr. Cadiz opined that Plaintiff had no more than minimal limitations in regard to grasping, turning, and twisting objects, using his fingers and hands for fine manipulations, and using his arms for reaching, including overhead. Further, Dr. Cadiz did not indicate on the Multiple Impairment Questionnaire that Plaintiff was limited in regard to noise, fumes, vision, temperature extremes, humidity, dust or heights. He also found that Plaintiff was capable of low stress jobs and that Plaintiff had limitations in regard to stooping and kneeling.

21

The ALJ found that Plaintiff had the RFC for the full range of light work,[3] including that he could occasionally lift as much as twenty pounds and frequently lift and carry as much as ten pounds; that he could stand or walk, off and on, for up to six hours during an eight-hour workday; that he should not climb ladders, ropes or scaffolds or perform activities where difficulty balancing could place him at risk; he could occasionally climb ramps or stairs, stoop, kneel, crouch or crawl; and he should avoid exposure to irritants and unprotected heights, moving machinery and workplace hazards. Tr. 17-18.   Thus, the ALJ did take Dr. Cadiz's opinion into consideration when formulating Plaintiff's RFC. See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrating that the ALJ gave some credit to the opinions of the treating physicians); Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions."). See also Martise v. Astrue,641 F.3d 909, 926 (8th Cir. 2010) (quoting Ellis, 392 F.3d at 994).

Sixth,  the ALJ has identified good reason for not accepting Dr. Cadiz's opinion, including that the record was inconsistent with his opinion. Tr. 20. See King v. Heckler, 742 F.2d 968, 973 (6th

---

[3]    The court notes that the Regulations define light work as 'involving] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b).  Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251,*6.

Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where, such as its not being supported by any detailed, clinical, or diagnostic evidence).

Seventh, as discussed above in regard to Plaintiff's credibility, the ALJ considered other medical records and treatment notes upon his failing to give controlling weight to Dr. Cadiz's opinion.  In particular, a June 8, 2006 consultive examination conducted by Barry Burchett, M.D., showed that Plaintiff had normal gait and that his appearance, orientation, and thinking seemed appropriate.  Although Dr. Cadiz reported that Plaintiff could not work in a job which required that he turn his head, Dr. Burchett reported, in regard to Plaintiff's neck, that there was no evidence of thyromegaly, palpable masses, lymph-adenopathy, jugular venous distention or hepatojugular reflux, and that the carotid arteries were normal. Tr. 270.  Dr. Burchett's consultive examination also showed that Plaintiff was not short of breath with exertion or while lying flat; that he had normal range of motions of the joints of the fingers of both hands; that Plaintiff's lower legs showed no tenderness, swelling, or fluid in the knees, ankles or feet; that Plaintiff's cervical spine showed no tenderness over the spinous processes and there was no evidence of paravertebral muscle spasm; that the dorsolumbar spine had normal curvature and there was no tenderness of the dorsolumbar spinous processes; that Plaintiff was able to stand on one leg at a time without difficulty; that he had no hip joint tenderness, redness, warmth, swelling, or crepitus; that his sensory modalities were well preserved; that his deep tendon reflexes were symmetrical and graded normally; that his cerebellar function was intact; that he was able to walk on his heels and toes; that he was able to tandem gait without difficulty; that he could squat three fourths of expected excursion being limited by bilateral knee pain; that there was no evidence of restricted range of motion or of compressive neuropathy; that Plaintiff did not have typical signs or symptoms of current carpal tunnel syndrome; and that he

23

did have decreased grip strength following carpal tunnel release surgeries. Tr. 268-71.  An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence." Prosch, 201 F.3d at 1013. See also Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.").  Thus, to the extent the ALJ discredited Dr. Cadiz's opinion based on the opinion of Dr. Burchett, the court finds that the ALJ's decision is based on substantial evidence.  To the extent Plaintiff contends that Dr. Burchett's findings support Dr. Cadiz's opinion, Plaintiff is mistaken for the aforementioned reasons.

Eighth, Dr. Cadiz made inconsistent statements regarding Plaintiff's ability to work.  For example, in October 2007, he indicated that Plaintiff could only stand for one hour total in an eight-hour workday, but one month later, in November 2007, he reported that Plaintiff could "stand more than 5 hrs total a day." Tr. 393, 467.  Where a physician's opinion is itself inconsistent, the ALJ need give it little weight. See Cruze v. Chater, 85 F.3d 1320, 1325 (8th Cir. 1996).

Ninth, Plaintiff suggests that the opinion of Dr. Hoos is consistent with Dr. Cadiz's opinion. Although Dr. Hoos did diagnose Plaintiff with obstructive sleep apnea, he did not suggest that Plaintiff's sleep apnea was uncontrollable; rather, he indicated that Plaintiff needed to return be fitted for more comfortable CPAP equipment. Tr. 413. Thus, Dr. Hoos's records reflect that Plaintiff's sleep apnea was treatable. Conditions which can be controlled by treatment are not disabling. See Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling).  Further, the record does not reflect that Plaintiff complied with this recommendation. See Davidson, 578 F.3d at 846.

24

Tenth, in regard to Plaintiff's argument that the ALJ should have recontacted Dr. Cadiz if he thought the record was insufficient, the Regulations do provide, at 20 C.F.R. § 404.1624(c)(3), that "[i]f the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled" then "we will try to obtain additional evidence under the provisions of §§ 404.1512 and 404.1519 through 404.1519h. Where, as in the matter under consideration, an ALJ determines that a treating doctor's opinion is "[c]ontradictory or unreliable," the ALJ is not required to seek additional information from the doctor. Hacker v. Barnhart, 459 F.3d 934, 938 (8th Cir. 2006). Further, where the record contains medical records and opinions of doctors, other than a claimant's treating physician, each of whom evaluated the claimant's limitations, as here, an ALJ need not recontact the claimant's treating doctor. See Weiler v. Apfel, 179 F.2d 1107, 1101 (8th Cir. 1999). The court finds, therefore, that the ALJ in the matter under consideration was not required to recontact Dr. Cadiz.

Eleventh, to the extent Plaintiff suggests that the ALJ misquoted Dr. Cadiz's records, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999). The court finds that any such deficiency does not have an effect on the outcome of Plaintiff's case as the ALJ's decision is based on substantial evidence on the record as a whole. In conclusion, the court finds that the ALJ gave proper weight to Dr. Cadiz's opinion and that the ALJ's decision, in this regard, is supported by substantial evidence and is consistent with the Regulations and case law.

**2.      Opinion of Roland Kuenzel, D.C.:**

25

Plaintiff contends that the ALJ did not give proper weight to the opinion of Dr. Kuenzel, a chiropractor, whom Plaintiff did not see until April 2007, and who reported that Plaintiff had tenderness over his entire spine. Tr. 380-81, 425-27, 430-31.

First, chiropractors are not an acceptable medical source of medical information to prove disability. See 20 C.F.R. §404.1513(a), (e) (1998) (acceptable medical sources include licensed physicians; chiropractors may only help to understand how impairment affects claimant's ability to work.).

Second, it was Dr. Kuenzel who ordered that Plaintiff have x-rays in April 2007 and, as discussed above, these x-rays showed, among other things, mild degenerative change with slight disc narrowing. Tr. 384.

Third, Dr. Kuenzel's notes primarily address Plaintiff's subjective complaints. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ was entitled to give less weight to the opinion of a treating doctor where the doctor's opinion was based largely on the plaintiff's subjective complaints rather than on objective medical evidence) (citing Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005)). In conclusion, the court finds that the ALJ gave proper weight to Dr. Kuenzel's opinion and that the ALJ's decision, in this regard, is supported by substantial evidence.


### 3.      The Opinion of Morris Alex, M.D.:

Plaintiff contends that the ALJ gave improper weight to the opinion of Dr. Alex, a medical expert who testified at the hearing.  Dr. Alex testified that he reviewed Plaintiff's medical records and listened to his testimony.   Dr. Alex said that, based on the record, there was no physical reason why

Plaintiff could not lift ten pounds frequently and twenty pounds occasionally and sit and stand six hours out of an eight-hour workday with normal breaks. Tr. 65. He further opined, based on Plaintiff's weight, that he would be limited in regard to bending, stooping, and crouching. Tr. 65. Due to his sleep apnea, Dr. Alex opined that Plaintiff should not be exposed to excessive heat and cold and fumes, odors, dust, gases and poor ventilation. Tr. 66. Additionally, Dr. Alex stated that Plaintiff was capable of working in a typical office environment and did not need a filtered air supply or "clean room" type condition in order to perform work activity. Tr. 66. The ALJ found the Dr. Alex's opinion to be more credible than Dr. Cadiz's opinion in that Dr. Alex's opinion was consistent with Plaintiff's medical records. As such, the ALJ noted that the RFC which he assigned to Plaintiff reflected Dr. Alex's opinion. Tr.20

In determining the weight to be given to the state agency consultant's opinions, the ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability." Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1076 (7th Cir. 1992)) (internal citations omitted). Dr. Alex, as a state agency consultant, is a highly qualified expert in Social Security Disability evaluation; as a result the ALJ must consider his findings. See 20 C.F.R. §§ 404.1527(f)(2)(i), 416,927(f)(2)(i). Significantly, Dr. Alex noted that although Plaintiff had mild degenerative changes, he did not meet any of the impairment listings. Tr. 63. Additionally, Dr. Alex noted that the fluid collection in his legs affected Plaintiff's ability to stand; that this condition, in the absence of any diagnoses by Dr. Cadiz, was related to Plaintiff's excess weight; that this condition might be controlled by the loss of weight and elastic stockings; and that, in fact, walking might relieve some of the excess fluid. Tr. 68-69.

The court has discussed above the ALJ's determination that Dr. Cadiz's opinion should not

be controlling. Indeed, the Eighth Circuit holds that an ALJ may afford greater weight to the opinion of a medical expert where a treating physician's opinion is inherently unreliable. See Hacker v. Barnhart, 459 F.3d 934, 937 (8th cir. 2006). The court finds that the record as a whole supports the conclusions of Dr. Alex to the extent his opinion conflicts with the opinion of Dr. Cadiz. Plaintiff contends that the ALJ erred by not finding that Plaintiff was unable to perform any work because of the restriction of avoiding all exposure to respiratory irritants. Plaintiff relies on testimony by Dr. Alex that Plaintiff should avoid all exposure to fumes, odors, dust, gases, and poor ventilation because of his sleep apnea. Tr. 66. The ALJ, however, included in his RFC determination that Plaintiff should avoid such exposure. In conclusion, the court finds that the ALJ gave proper weight to Dr. Alex's opinion and that the ALJ's decision, in this regard, is supported by substantial evidence.

C.

**The ALJ's Finding That There is Work Which Plaintiff Can Perform:**

The court has set forth, above, the RFC, which the ALJ assigned to Plaintiff, which is that Plaintiff can perform light work, with certain restrictions, including that Plaintiff should avoid exposure to irritants such as fumes, odors, dusts, gases, and poor ventilation. The Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). Upon determining Plaintiff's RFC, the ALJ considered the combination of Plaintiff's mental and physical impairments. Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). Further, the ALJ "assess[ed] [Plaintiff's] RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and [Plaintiff's] own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995).

28

Significantly, the ALJ considered Plaintiff's credibility, and relied heavily on Plaintiff's medical records, and considered the medical expert's opinion in this regard. See Lauer, 245 F.3d at 704 (holding that although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question'" ) (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)).  The court finds that the ALJ's determination of Plaintiff's RFC is based on substantial evidence and that it is consistent with the Regulations and case law.

After determining Plaintiff's RFC, the ALJ posed a hypothetical to a VE, which included only those limitations which the ALJ found credible and which RFC was consistent with the opinion of Dr. Alex. Tr. 73-74.  An ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible. Martise, 691 F.3d at 909, 927(8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir.2006)); Guilliams, 393 F.3d at  804 (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ);  Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania v. Sec'y of Health, Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio, 862 F.2d at 180.  The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Sobania, 879 F.2d at 445; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985).

The court has found that the ALJ's RFC determination is based on substantial evidence. The VE testified that the environmental limitations described by Dr. Alex and included in Plaintiff's RFC did not preclude normal office work as minor irritants would not normally be found in a typical office setting. Tr. 77. The VE testified that there was work in the national economy which a person with Plaintiff's RFC, and having Plaintiff's age, education and work experience, could perform. Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a VE's testimony constitutes substantial evidence supporting the ALJ's decision. Martise, 641 F.3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix, 465 F.3d at 889; Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990). Plaintiff's argument to that the ALJ should have found that he was unable to work because he was precluded from being exposed to respiratory irritants is, therefore, without merit. The court further finds that the ALJ properly relied on the VE's testimony that there is work in the national economy which Plaintiff can perform and that the ALJ's decision, in this regard, is based on substantial evidence and consistent with the Regulations and case law. As such, the court finds that the ALJ properly found that Plaintiff is not disabled and that his decision, in its entirety, is based on substantial evidence.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint, Brief in Support of Complaint, and Reply is **DENIED**; Docs. 1, 11, 18

**IT IS FURTHER ORDERED** that a separate judgment will be entered incorporating this Memorandum Opinion.

> /s/Mary Ann L. Medler
> MARY ANN L. MEDLER
> UNITED STATES MAGISTRATE JUDGE

Dated this 17th  day of January, 2012